IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**GORDON MAAG,**

    **Plaintiff,**

**v.**

**CHICAGOLAND CHAMBER OF COMMERCE,**
a not-for-profit corporation, et al.

    **Defendants.**　　　　　　　　　　　　**Case No. 05-CV-711-DRH**

### MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION & BACKGROUND

Before the Court are various motions to stay and two supplements thereto, filed by Defendants[1] in this case. (*See* Docs. 8, 12, 29, 40, 48, 49, 55, 70, and 83, respectively.) Additionally, plaintiff Gordon Maag has filed a Motion for Hearing on All Pending Motions. (Doc. 72.) Essentially, Defendants ask the Court to stay this matter pending resolution of Plaintiff's state court proceeding filed in the Circuit Court of Madison County, Illinois, which is now currently on appeal to the Illinois Appellate Court, Fifth District. (*See* Doc. 83, pp. 9-10.)

Defendants' motions to stay were based largely upon the ***Colorado***

---

[1] The defendants currently in this suit are as follows: the Chicagoland Chamber of Commerce, Gregory Baise, Ronald Gidwitz, the Illinois Civil Justice League, the Illinois Coalition for Jobs, Growth and Prosperity, the Illinois Manufacturers Association ("IMA"), the Illinois State Chamber of Commerce, IMA Service Corporation, a.k.a. Xpress Professional Services, the Illinois Business Roundtable, and the United States Chamber of Commerce (collectively referred to as "Defendants).

***River*** abstention doctrine, which holds that "a federal court may stay a suit in exceptional circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.' " ***Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004)(citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976))**.  At the time Defendants' motions to stay were filed, Plaintiff had a suit pending in the Circuit Court of Madison County, Illinois, before the Honorable Judge Kelley.[2]  Plaintiff filed the state court action against four of the ten current Defendants in this suit.[3]  Therefore, Defendants believed the instant suit should be stayed, as they felt Plaintiff's state suit amounted to a "concurrent proceeding."

Shortly after the last of Defendants' motions became ripe for review by the Court, Judge Kelley issued an order dismissing with prejudice Plaintiff's First Amended Complaint from state court.  (*See* Doc. 70, Ex. A.)  This information was provided to the Court via Defendants' Supplement to their Motion to Stay.  (Doc. 70.)  Specifically, Judge Kelley found Plaintiff had failed to allege extrinsic facts in Count I to establish a claim for defamation *per quod* (i.e., the pleading contained no allegation of an identifiable third party who interpreted promotional flyer at issue as an attack on Plaintiff's character).  The state court judge also found that Plaintiff

---

[2] *See **Maag v. Illinois Coalition for Jobs, Growth and Prosperity, et al.*, Case No. 04-L-1395 (Circuit Court for the Third Judicial Circuit, Madison County, Ill.)(Kelley, J.)**.

[3] In his state lawsuit, Plaintiff filed suit against the Illinois Coalition for Jobs, Growth and Prosperity, the Illinois State Chamber of Commerce, Ronald Gidwitz and Gregory Baise.

failed to allege special damages with sufficient particularity (i.e., the flyer at issue caused a slip in the polls or identifiable voter who declined to vote for Plaintiff due to flyer), noting that many courts do not even provide for special damages in election cases. (*See* Doc. 70, Ex. A, ¶¶ 1-2.)  Further, Judge Kelley found Plaintiff failed to allege actual malice with sufficient particularity. (*Id*. at ¶ 3.)  Lastly, Judge Kelley held that Count II must be dismissed because Plaintiff could not, as a public office holder with no sufficient expectancy of continued employment, state a claim for tortious interference with a prospective economic advantage.  (*Id*. at ¶ 4.)

Plaintiff has filed an opposing Response to the first Supplement to Defendants' Motion to Stay, stating that he is currently appealing Judge Kelley's dismissal order. (Doc. 71, p. 1.)  A second supplement to Defendants' motions to stay confirms the existence of this appeal, as it attaches Plaintiff's Notice of Appeal as Exhibit A. (Doc. 83.)  As a pending appeal of Plaintiff's state court action exists, Defendants have refined their argument in attempt to persuade the Court that Seventh Circuit law favors a stay of concurrent state proceedings, even when that state proceeding is presently being appealed.  (Doc. 70, p. 2.)

In order to properly determine whether this federal court proceeding should be stayed, the Court must first examine whether precedent allows the application of the **Colorado River** abstention doctrine to state court proceedings presently on appeal.  If the Court answers this issue in the affirmative, it must then address whether the **Colorado River** doctrine applies to this case.  If applicable,

Page 3 of 16

then a stay of the current federal proceeding will be warranted.

## II. ANALYSIS

### A. DETERMINING WHETHER THE *COLORADO RIVER* ABSTENTION DOCTRINE APPLIES TO STATE COURT PROCEEDINGS CURRENTLY ON APPEAL

Plaintiff has appealed the dismissal of his Illinois state court proceeding. Therefore, rather than simply determining whether a stay should be granted in this matter, the Court must make an initial examination as to whether there exists sufficient precedent to allow for the application of the **Colorado River** abstention doctrine to state proceedings currently on appeal. The Court finds that Seventh Circuit precedent exists, as illustrated by **Rogers v. Desiderio, 58 F.3d 299 (7th Cir. 1995)** and **Hearne v. Bd. of Educ. of the City of Chicago, 185 F.3d 770 (7th Cir. 1999)**.

In **Rogers**, plaintiffs appealed when a district court dismissed their action based on abstention grounds, due to their contemporaneous related state court action.[4] **Rogers, 58 F.3d at 300**. **Rogers** noted that "[a] decade ago the

---

[4] Specifically, the Seventh Circuit found plaintiffs had "claim-split" their causes of action between both their state and federal suits, and stated the following:

> This court deprecates the practice of filing two suits over one injury – often with an argument based on state law presented to a state court, and an argument arising under federal law presented to a federal court. Multiplication imposes needless costs on one's adversary, on the judicial system, and on other litigants, who must endure a longer queue. Plaintiffs hope that more suits will improve their chances: they seek the better of the outcomes. To discourage this tactic, judges award plaintiffs not the better outcome but the first outcome: whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion (res judicata) requires the other court to dismiss the litigation.

**Rogers, 58 F.3d at 300 (citations omitted)**.

Supreme Court of Illinois announced that the filing of an appeal suspends the collateral estoppel (issue preclusion) effect of a judgment." ***Id.* at 302 (citing *Ballweg v. Springfield*, 114 Ill.2d 107, 113, 499 N.E.2d 1373, 1375, 102 Ill. Dec. 360, 362 (1986))**. Further, ***Rogers*** explained that "two of the state's intermediate appellate courts have extended ***Ballweg*** from issue preclusion to claim preclusion." ***Id.* (citing *Luckett v. Human Rights Commission*, 210 Ill. App. 3d 169, 175, 569 N.E.2d 6, 10, 155 Ill. Dec. 6, 10 (1st Dist. 1989); *Pelon v. Wall*, 262 Ill. App. 3d 131, 135, 634 N.E.2d 385, 388, 199 Ill. Dec. 546, 549 (2d Dist. 1994))**.

However, ***Rogers*** found there existed an "intra-court conflict," in that the Fourth Division of the Illinois Appellate Court for the First District, continued to adhere to the principle that decisions of the court of first instance are given preclusive effect whether or not the losing party has taken an appeal, as set forth in ***State Life Ins. Co. v. Bd. of Educ.*, 404 Ill. 252, 257, 81 N.E.2d 877, 880 (1948)**. ***Id.* (citing *Ill. Founders Ins. Co. v. Guidish*, 248 Ill. App. 3d 116, 120, 618 N.E.2d 436, 440, 187 Ill. Dec. 845, 849 (1st Dist. 1993))**. Also following this traditional approach is the Illinois Appellate Court for the Fourth District, as illustrated by ***Shaw v. Citizens State Bank of Shipman*, 185 Ill. App. 3d 79, 81, 540 N.E.2d 1132, 1134, 133 Ill. Dec. 266, 268 (4th Dist. 1989))**. ***Id.***

As a result of the noted "intra-court conflict," the Seventh Circuit concluded as follows:

> **"To be blunt, we have no idea what the law of Illinois is on the question whether a pending appeal destroys the claim preclusive effect of a judgment. Under the circumstances, a stay rather than immediate decision is the prudent course. A federal judge confronted with duplicative litigation need not barge ahead on the off-chance of beating the state court to a conclusion. It is sensible to stay proceedings until an earlier-filed state case has reached a conclusion, and then (but only then) to dismiss the suit outright on grounds of claim preclusion."**)

*Id.*, (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-21 (1976)(other citations omitted)).

Ultimately, the **Rogers** court vacated the dismissal of the plaintiff's federal suit and remanded the matter back to district court "with instructions to stay further proceedings pending decision by the state's appellate court," so that the district court could then "proceed as appropriate in light of the final disposition of the state-court action." *Id.* (**"[I]f the state case should break down in a way that avoids the preclusive effect of the judgment, plaintiffs would be entitled to a decision on the merits from the federal court."**).

The Seventh Circuit adhered to its decision in **Rogers** in a similar case, decided four years later. *See Hearne v. Bd. of Educ. of the City of Chicago*, 185 F.3d 770 (7th Cir. 1999). *Hearne* involved plaintiffs who had also filed contemporaneous parallel actions in both state and federal court. *Id.* at 777 (also

**finding plaintiffs chose to "split claims")**.  The district court dismissed plaintiffs' federal action, and plaintiffs appealed to the Seventh Circuit.  *Id.* **at 772**.  Observing that plaintiffs' case was "one in which proceedings in the state trial court have come to a close and further appellate review is possible," the Seventh Circuit determined the matter was essentially "identical" to the situation in *Rogers*.  *Id.* **at 778 (citing** *Rogers***, 58 F.3d at 299)**.  Basically, *Hearne* involved the same question of the preclusive effect of a state court judgment that is pending on appeal.  *Id.*  As such, *Hearne* followed the "principles of sound judicial administration that animated the decision in *Colorado River* [that] caused this court to require a stay of the federal proceedings in *Rogers*."  *Id.* **(Finding the "clarity of Illinois law of preclusion . . . on the effect of a judgment that is still being appealed has not changed appreciably since we decided** *Rogers***)**.  The Seventh Circuit similarly vacated the dismissal, remanding the matter back to the district court to enter a stay pending the outcome of the state court proceeding.

Due to the existence of sufficient precedent, as set forth in *Rogers* and *Hearne*, the Court finds that in this matter it is able to examine whether the *Colorado River* abstention doctrine applies to warrant a stay pending resolution of Plaintiff's state court proceeding, currently on appeal.

**B.     APPLYING THE *COLORADO RIVER* ABSTENTION DOCTRINE IN ORDER TO DETERMINE WHETHER A STAY IS WARRANTED**

The ***Colorado River*** abstention doctrine allows "a federal court [to] stay a suit in exceptional circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.' " ***Clark v. Lacy*, 376 F.3d 682, 658 (7th Cir. 2004)(citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976))**. Mainly, the purpose of the ***Colorado River*** doctrine is to "avoid duplicative litigation." ***Colorado River*, 424 U.S. at 817 (citations omitted)**. However, "abstention is the exception," as a federal court just not simply surrender its jurisdiction absent the "clearest of justifications." ***Clark*, 376 F.3d at 685 (citations omitted)**. Simply because an action is pending in state court is "ordinarily no bar to parallel federal proceedings." ***Id.* (citing *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989))**.

Determining whether a stay is warranted in a federal proceeding pursuant to the ***Colorado River*** abstention doctrine involves a two-part analysis. First, the court should determine whether the state and federal actions are parallel. ***Id.* (citing *LaDuke*, 879 F.2d at 1559)**. Once the federal court determines the actions to be parallel, it must next consider a variety of non-exclusive factors that might show the requisite "exceptional circumstances." ***Id.*** Therefore, in this matter, it is first necessary to determine whether Plaintiff's concurrent state and federal suits are actually "parallel."

### 1. Whether Plaintiff's State and Federal Suits are Parallel

An action is deemed "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." **Clark, 376 F.3d at 685**. However, the two suits need not be identical. **Id. (noting that "formal symmetry" is not required)**. Instead, the Court should look to whether there exists a " 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.' " **Id. (quoting Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 694-95 (7th Cir. 1985))**.

Here, Defendants feel that the actions are parallel, as both Plaintiff's state and federal suits involve alleged defamation which occurred during Plaintiff's 2004 campaign for Illinois state judicial elections. In Plaintiff's state action, he sued based upon statements contained within a promotional flyer, which appears to have advocated *against* his election. (*See* Doc. 15, Ex. 3.) His federal action concerns statements contained within separate flyers and a television advertisement, as well as internet reprints of flyers, including the same flyer at issue in the state suit, all of which also similarly appear to have advocated *against* Plaintiff's election. (*See* Doc. 3.) Defendants therefore feel that Plaintiff's claims in both the state and federal suits arise from the same transaction/occurrence or series of transactions/occurrences – in that Plaintiff could have easily included in his state suit the claims alleged in his federal suit. (*See, e.g.*, Doc. 15, pp. 4-5.) In fact, Defendants point out that this federal action is based solely upon diversity jurisdiction – Plaintiff states no federal

claims. (*Id*. at 6.)

Plaintiff counters this argument, asserting that his state and federal actions are not parallel, and therefore, abstention under the **Colorado River** doctrine is inapplicable. Specifically, Plaintiff argues that each defamatory statement alleged is a separate cause of action (or transaction), including every republication of the same information on a different occasion, because it occurred under different circumstances at a different time. (*See* Doc. 71, p. 3, citing **53 C.J.S., Libel & Slander, § 53, at 103 (1987); 33A ILL. L. & PRAC., Slander & Libel, § 43 (1970))**. Additionally, Plaintiff cites case law stating that even if a statement by itself is considered *non*-defamatory, if it is repeated on another occasion with additional statements, it may then be amplified to be considered defamatory in context with those additional statements. (*Id*. at 4, citing **Rosner v. Field Enterprises, 564 N.E.2d 131 (1990)**.)

In his First Amended Complaint, filed in his federal suit, Plaintiff brings claims for defamation *per se*, defamation *per quod*, and tortious interference with a prospective economic advantage. (Doc. 3.) Similarly, in Plaintiff's state suit, he first brought claims of defamation *per se*, based upon the contents of flyer used against Plaintiff in the 2004 Illinois state judicial election campaign. (Doc. 15, Ex. 1.) Plaintiff's state suit was dismissed, as the circuit court found his allegations did not support a claim defamation *per se*. (*Id*., Ex. 2.) Plaintiff then proceeded to file his First Amended Complaint in his state suit, stating claims of defamation *per quod*

Page 10 of 16

and tortious interference with a prospective economic advantage, based upon the contents of the same flyer as in Plaintiff's initial complaint. (*Id*., Ex. 3.) Again, the Illinois circuit court dismissed with prejudice Plaintiff's First Amended Complaint, finding he failed to state claims upon which relief could be granted. (Doc. 70, pp. 10-11.) Plaintiff is currently appealing the dismissal of his First Amended Complaint to the Illinois Appellate Court. (Docs. 71 & 83.)

As the parties note, the essential differences between Plaintiff's state and federal suits are that in his federal suit, Plaintiff has sued six additional defendants than in his state suit. However, "[t]he addition of a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings." **Clark, 376 F.3d at 686 (citing *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.3d 1154, 1156 (7th Cir. 1990))**. Therefore, this difference is nominal.

Also in his federal suit, Plaintiff's claims arise from several other flyers and one television advertisement – not just the one flyer at issue in his state suit. Even though Plaintiff argues that each defamatory statement is a separate cause of action, the Court does not find such argument will preclude a **Colorado River** analysis of this matter. It is still likely that resolution of the merits of Plaintiff's state suit could dispose of all of the issues in the federal case, pursuant to *res judicata* (claim preclusion), which serves to bar "not only those issues which were actually decided in a prior suit, but also issues which could have been raised in that action." ***Kratville v. Runyon*, 90 F.3d 195, 197 (7th Cir. 1996)(quoting *Brzostowski v.***

*Laidlaw Waste Syst., Inc.*, **49 F.3d 337, 338 (7th Cir. 1995))**.

In this instance, the Court finds that Plaintiff's federal and state suits are parallel because, although not completely identical, they are indeed "sufficiently similar." **See *Clark*, 376 F.3d at 686**. Several of the defendants are identical to defendants in Plaintiff's state suit. The flyer at issue in Plaintiff's state suit is also at issue here in Plaintiff's federal suit (*see* Doc. 3, p. 45, Count XIII) and although it is not the only allegedly defamatory material from which Plaintiff's claims arise in the federal suit, all of the flyers and television advertisement contains substantially similar content.

More importantly, all of the materials at issue in Plaintiff's federal suit were published at approximately the same time the flyer at issue in Plaintiff's state suit was published: for the 2004 judicial campaign era. Yet, Plaintiff fails to assert adequate reason within his briefings as to why he chose not to bring claims regarding these additional materials in his state suit; why instead, he chose to later file this federal suit. **See *Rogers*, 58 F.3d at 300 (explaining that *res judicata* discourages the practice of claim splitting)**. Because Plaintiff's claims in both suits involve Illinois law and raise the same legal issues, the Court finds that the issues of whether such content is considered "defamatory" and whether Defendants' actions "tortiously interfered" with Plaintiff's prospective economic advantage, are best left to the state court for resolution.

Further, because the Court finds the content of the flyer at issue in

Plaintiff's state suit to be substantially similar to the content of the materials at issue in his federal suit, the outcome of the federal court proceedings will almost inevitably mirror those in state court. It is not for the Court to circumvent the principles of *res judicata* simply because Plaintiff chose not to include the additional materials in his state suit. Therefore, because the Court has deemed Plaintiff's state and federal suits to be "parallel," it must now focus on whether "exceptional circumstances" exist to warrant a stay pursuant to the **Colorado River** abstention doctrine.

2.   **Whether "Exceptional Circumstances" Exist**

Once the Court determines the state and federal suits are parallel, it must then consider "a number of non-exclusive factors that might demonstrate the existence of 'exceptional circumstances.' " **Clark, 376 F.3d at 685 (quoting LaDuke, 879 F.2d at 1559)**. These factors are as follows:(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of the governing law, state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. ***Id.* (citations omitted)**.

Considering the above-listed factors, the Court finds that several weigh in favor of finding "exceptional circumstances" to warrant a stay in this matter

pursuant to the **Colorado River** abstention doctrine. To begin, as the Court deems Plaintiff's state and federal suits to be parallel, there certainly exists the desire to avoid piecemeal litigation. It would result in a waste of judicial resources, should Plaintiff's two actions continue to proceed simultaneously. Staying Plaintiff's federal suit would then also guard against "the danger of the two proceedings reaching inconsistent results." **Id. at 687**.

Another point to note is that the state court first obtained jurisdiction, as Plaintiff filed his initial Complaint in the Circuit Court of Madison County, Illinois on or about December 20, 2004, (Doc. 15, Ex. A) and did not file suit in federal court until on or about September 29, 2005 (Doc. 1).[5] Further, as previously stated, Plaintiff brings forth no claims in the instant matter pursuant to any federal law – his claims in both his state and federal suits are governed by Illinois law. " '[A] state court's expertise in applying its own law favors a **Colorado River** stay.' " **Id. at 688 (quoting Day v. Union Mines, Inc., 862 F.2d 652, 660 (7th Cir. 1988))**.

The fact that Plaintiff chose to initially file his action in state court makes it difficult to find that the state court will not adequately protect plaintiff's rights. Plaintiff also chose to file the federal suit and, more importantly, he chose *not* to dismiss his state action once he commenced his federal suit. **See, e.g., LaDuke,**

---

[5] Moreover, there is an outstanding issue of whether diversity jurisdiction exists in Plaintiff's federal suit, as defendant Chamber of Commerce of the United States of America has sought, alternatively, for a dismissal of Plaintiff's Amended Complaint pursuant to Rule 12(b)(1), challenging Plaintiff's allegation that he is a citizen and resident of Alabama. (Doc. 15, pp. 7-9.) Several of the other Defendants have requested additional time to answer or otherwise plead in this matter if a stay is not granted, alluding to the possibility they may also challenge Plaintiff's claim of federal subject matter jurisdiction pursuant to **28 U.S.C. § 1332** (diversity).

**879 F.2d at 1561 (reasoning why state court could adequately protect the plaintiff's interests when considering the *Colorado River* factors)**.

Obviously, Plaintiff's state suit, being at the appellate stage subsequent to being dismissed by the circuit court, is farther along than his federal suit.  This is the second dismissal of Plaintiff's complaint in state court.  There is also no feasible availability for removal at this point.  At the time Plaintiff filed his initial complaint in state court, he was allegedly a resident of the state of Illinois, therefore, removal without other federal question grounds was not possible.  At the time diversity jurisdiction (allegedly) began to exists between the parties, one Defendant notes that "the 30-day period for removal contain[ed] in **28 U.S.C. § 1446(b)** ha[d] long since passed." (Doc. 15, p. 6.)  Therefore, Plaintiff's state action could not, and cannot now be removed to federal court.

Lastly, it is certainly questionable as to whether Plaintiff's federal claims are "vexatious or contrived in nature."  Defendants argue that Plaintiff's filing of his federal suit after his initial state suit had been dismissed amounts to mere forum shopping.  (Doc. 9, pp. 7-8; Doc. 15, p. 6.)  Essentially, several Defendants believe Plaintiff would like "to start over in a new forum - one that he presumably hopes will treat his claims more favorable."  (Doc. 9, p. 8.)  Also questionable is the fact that Plaintiff has recently become an Alabama resident, when he has been a long-time Illinois resident – which conveniently created diversity, allowing him a basis for filing his federal suit.  (Doc. 15, p. 6.)  The Court will decline to comment on this

particular issue for now, although Defendants' concerns are certainly legitimate.

The Court finds that enough factors weigh in favor of finding that there exist "exceptional circumstances" to warrant a stay of Plaintiff's federal suit, pursuant to the ***Colorado River*** abstention doctrine. Accordingly, Plaintiff's federal suit will be stayed pending resolution of his parallel state court proceedings.

### III. <u>CONCLUSION</u>

In sum, the Court finds that a stay is warranted under the ***Colorado River*** abstention doctrine, as Plaintiff's state suit filed in the Circuit Court of Madison County, Illinois (currently on appeal) and his instant federal suit are "parallel," and exceptional circumstances exist to support this decision. Accordingly, the Court **GRANTS** Defendants' respective motions to stay. (Docs. 8, 12, 29, 40, 48, 49, and 55.) As such, Defendants' various requests for relief in the alternative, such as dismissal of Plaintiff's claims pursuant to Rule 12(b)(1) and (b)(6), or for an extension of time to answer or otherwise plead, are hereby deemed **MOOT**. Additionally, Plaintiff's Motion for Hearing on All Pending Motions (Doc. 72) is deemed **MOOT**. This case is presently **STAYED** pending the final resolution of Plaintiff's Illinois state suit, currently on appeal.

**IT IS SO ORDERED.**

Signed this 17th day of February, 2006.

/s/        David RHerndon
**United States District Judge**